IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION – LAW

| | | |
|---|---|---|
| **KELSEY T. BAKER AND FRANK W. BAKER, HUSBAND AND WIFE, AND ALL OTHERS SIMILARLY SITUATED,**<br>**1340 Clearview Drive**<br>**Jamison, PA 18929,** | : <br> : <br> : <br> : <br> : <br> : | **18-cv-** |
| **Plaintiffs** | : | **CLASS ACTION** |
| | : | |
| | : | **RICO,** *ET AL* |
| **v.** | : | |
| | : | |
| **PALACE ELITE RESORTS, S.A. DE C.V., TRADING AS PALACE ELITE AND PALACE RESORTS**<br>Kilometro 21 de la Carretera<br>**Cancun, Puerto Morelos SM 47**<br>**Iote 1-11,Manzana 01 Edificio A**<br>**Cancun, Quintana Roo**<br>**And**<br>**8400 NW 33rd Street Suite 403**<br>**Doral, Florida 33122** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| **And** | : <br> : | |
| **MY TIMESHARE OPTIONS AND DAN BISHOP**<br>**2885 Sanford Avenue, SW #38365**<br>**Grandville, MI 49418**<br>**And**<br>**2000 Mallory Lane, Suite 130-352**<br>**Franklin, TN 37067** | : <br> : <br> : <br> : <br> : <br> : | |
| **And** | : <br> : | |

**ADAM GLENN,** :
**c/o MY TIMESHARE OPTIONS** :
**2885 Sanford Avenue, SW #38365** :
**Grandville, MI 49418** :
**And** :
**2000 Mallory Lane, Suite 130-352** :
**Franklin, TN 37067** :
:
**And** :
:
**CI BUSINESS BROKERS** :
**209 S. LaSalle Street** :
**Chicago, IL 60604** :
:
**And** :
:
**ADAM GLENN** :
**c/o CI BUSINESS BROKERS** :
**209 S. LaSalle Street** :
**Chicago, IL 60604** :
:
**And** :
:
**INTEGRITY PROFESSIONAL** :
**SERVICES, LLC , t/a Integrity** :
**Professional Closing** :
**Suite G25** :
**330 Mallory Station Road** :
**Franklin, TN 37067** :
:
**And** :
:
**VICTORIA MOLINARI** :
**c/o INTEGRITY PROFESSIONAL** :
**SERVICES, LLC** :
**Suite G25** :

2

**330 Mallory Station Road**  
**Franklin, TN 37067**                                    :

                                                          :

                                                          :

             **And**                                    :

                                                          :

**HECTOR RODRIGUEZ**                                      :

**c/o PALACE ELITE RESORTS, S.A.**                        :

**DE C.V., TRADING AS PALACE**                            :

**ELITE AND PALACE RESORTS**                              :

**Kilometro 21 de la Carretera**                          :

**Cancun, Puerto Morelos SM 47**                          :

**Iote 1-11,Manzana 01 Edificio A**                       :

**Cancun, Quintana Roo**                                  :

                                                          :

             **And**                                    :

                                                          :

**NATHAN FLETCHER**                                       :

**c/o CI BUSINESS BROKERS**                               :

**209 S. LaSalle Street**                                 :

**Chicago, IL 60604**                                     :

                                                          :

             **And**                                    :

                                                          :

**WILLIAM ROJAS**                                         :

**DAVE NAGAR**                                            :

**c/o CI BUSINESS BROKERS**                               :

**209 S. LaSalle Street**                                 :

**Chicago, IL 60604**                                     :

                                                          :

             **And**                                    :

                                                          :

**ANDY MALONEY, AND**                                     :

**RICHARD GREEN**                                         :

**c/o Integrity Professional Closing**                    :

**3310 West End Avenue, #540**                            :

**Nashville, TN 37203**                                   :

                                                          :

             **And**                                    :

3

**SALVADOR BELTRAN**          :
**SANTANA**                   :
**REALTY BROKERS**            :
**INTERNATIONAL**             :
**7101 College Blvd. #1650**  :
**Overland, Kansas 66210**    :
                              :
                              :
**TITLE AND INSURANCE**       :
**FUNDS, INC.**               :
**44 E. Mifflin Street**      :
**Madison, WI 53703**         :
                              :
                              :
          **And**             :
                              :
**JANE DOE, individually and**    :
**JOHN DOE, individually and**    :
**UNKNOWN CORPORATION OR**        :
**LLC's, Addresses Unknown**      :

## CLASS ACTION COMPLAINT IN CIVIL ACTION

## I.   INTRODUCTORY STATEMENT

1.    This case involves a scheme by which the captioned Defendants have

engaged and engage in fraudulent transactions, including, but not limited to, mail

fraud and wire fraud.

2.    The fraudulent transactions involve the following activities by

Defendants:

a.    Defendant, Palace Elite Resorts, S.A. De C.V., Trading as

Palace Elite and Palace Resorts (hereinafter referred to as "Palace") would release

4

information regarding ownership of time-share purchases to some or all of the other Defendants;

      b.    The information releases by Palace to the other Defendants contains such information as follows:

      (i)    The name, address and telephone number of the time-share owner, such as Plaintiffs;

      (ii)    The social security number and other identifying information of the time-share owner, such as Plaintiffs;

      (iii)    Information pertaining to the time-share units owned by Plaintiffs, by address, effective dates of the specific time-share units, use of the time share units by Plaintiffs, and account numbers and the like; and

      (iv)    Other information basically confirming to Plaintiffs, when contacted by Defendants, that the offers set forth below are legitimate and sanctioned by Palace.

      c.    The information obtained from Palace is then the subject of various Defendants' communications to Plaintiffs and members of the class that are utilized as follows:

      (i)    Defendants so informed by Palace of critical and integral personal information as to time-share owners, Defendants such as C1Business

5

Brokers ("C1"), Integrity Professional Services, LLC ("Integrity"), and Realty Brokers International, by their respective principals, would contact the time-share owners, inquiring if the time-share owners would like to rent/sell the time-share units, or portions thereof, to unnamed third-parties through the Defendants;

(ii)    During the process, the various Defendants concocted material misrepresentations of fact that are reasonably believable and intended to cause the time-share owner to rely on the fact that the various Defendants have authority to have the related information in their possession from Palace, and they are therefore authorized to act on behalf of the time-share owners in locating and arranging rentals/sales of the time-share owner's time-shares, rendering the various Defendants' misrepresentations credible;

(iii)    Furthermore, the concept being sold is that other persons known to or who are customers of the various Defendants have expressed an interest in buying or renting the time-share hours that the time-share owners are willing to rent or sell;

(iv)    Rental agreements with renters are exhibited to the time-share owners, adding credibility to the scheme;

6

(v)    In the alternative or the cumulative, sales agreements with prospective purchasers are available and exhibit the interest of purchasers, adding to the credibility of the scheme;

(vi)    The transactions are committed to writing, followed by Plaintiffs being advised that, before the transactions can be finalized, the time-share owners must advance all "maintenance charges" for the period of time of the rentals, or the time remaining on time-shares to be sold.  Plaintiffs and the Class members are assured that Plaintiffs will be reimbursed these sums at settlement, and the Plaintiffs and Class members pay these sums to Defendants;

(vii)    Furthermore, Plaintiffs and members of the class are subsequently informed that there are additional charges that must be paid before the transaction can be fully consummated:  These additional charges include, but may not be limited to:

(A)    A Mexican charge for the Mexican "value added tax";

(B)    A Mexican imposed income tax that Plaintiffs and the members of the class had to pay based on the income from the transactions **yet to be received** [emphasis supplied];

(C)    A Mexican charge for a "permit";

7

(D)    Other charges not yet identified.

3.    Upon the conclusion of the sellers'/lessors' (the owners of the time-shares: Plaintiffs and Class members) submission of the funds necessary to conclude the transactions – the time after which Plaintiffs and the members of the class that were to have allegedly been the precursor to the consummation of the rental/sale, the time when the funds derived from the rental/sale were to have been paid to the Plaintiffs and members of the class, all communications with respective Defendants were disconnected or no longer in service, or, at minimum, were no longer available for Plaintiffs or the Class members.  After the transactions involving the payment of the specified funds to Defendants, the victims of this fraud - Plaintiffs and members of the class – were supposed to have received the fruits of the sale/rental agreements in the form of the purchase or rental prices that the alleged third party purchasers or renters were supposed to pay.

4.    By the time that the payments were to be made to Plaintiffs and members of the Class, the respective Defendants absconded with the funds paid to them:  The telephone numbers were no longer active; the respective Defendants were unable to be located; Palace denies any involvement.[1]

---

[1] The specific details that befell Plaintiffs are the same as the fraudulent happenings to the members of the Class.  *See* "Factual Statement", below.

5.    Plaintiffs were caused to spend $27,293.00 plus costs, plus other damages incurred, more fully discussed below.

6.    There is no question that Palace is the centerpiece of the facts and causes of action set forth below as, without the information provided by Palace, the scam/scheme that took place, and the Enterprise involving numerous co-conspirators, would have been ineffective without Palace's release of specific individual and business information regarding each Class member and the Plaintiffs; in other words, the fraud could not have occurred without the input of Palace.

7.    Plaintiffs and the respective Class members have suffered the loss of significant sums of money as a direct and proximate result of the scam in which Defendants participated.

8.    The RICO Statute, 15 U.S.C. § 1961, *et seq.*, states: "Any person injured in his business or property by reason of a violation of section 1962 [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, ... .".

The acts and actions of each Defendant are more fully discussed below in "Statement of Facts".

## III.   **JURISDICTION AND VENUE**

9.     Jurisdiction is conferred upon this Court by and pursuant to 18 U.S.C. § 1964 of the federal Racketeer Influenced and Corrupt Organizations Act, ("RICO") *inter alia*.

10.     Venue is appropriate in this district as the violations as to the Plaintiffs underlying this action were made in this District; the Defendants initiating the transactions with Plaintiffs contacted Plaintiff in this district and therefore conduct or have conducted business in this District, or are principals with corporate entities or LLC's that do conduct business in this district.

11.     Furthermore, all of the acts and actions directed at Plaintiffs were directed into this district, the district of Plaintiffs' residence, banking, and the district into which all communications by the respective Defendants  were made.

12.     The mail fraud and wire fraud committed by Defendants all involved this district, although the comprehensive nature of the fraud encompasses a nationwide scam.

13.     However, see Exhibit "A", representing a contractual agreement by and between Palace and Plaintiffs, dated October 17, 2013; specifically, *see* paragraph Ninth, entitled: "Applicable Laws and Jurisdiction" which states, *inter alia*: "In the event of any conflict, controversy  or claim arising from or in relation

to this Contract including Attachment 'A'[2], will be resolved in accordance with the internal laws of Mexico and in the competent courts of the City of Cancun, Quintana Roo, Mexico."

14.    However, the causes of action, specifically the major cause of action – RICO – of this Complaint has nothing to do with the contract, and the assertions set forth herein have no applicability to a "conflict, controversy or claim arising from or in relation to this Contract"; this case is about the fraud perpetrated upon Plaintiffs and members of the Class.

## IV.    **PARTIES**

15.    Plaintiffs, Kelsey T. Baker and Frank Baker, Wife and Husband ("Bakers" or "Plaintiffs"), are individuals and "consumers" as defined by 15 § U.S.C. 1692a.  Plaintiffs reside at the address set forth in the caption hereto which is 1340 Clearview Drive, Jamison, PA 18929.

16.    Defendants are as follows:

a.    Defendant, Palace Elite Resorts, S.A. De C.V. , trading as Palace Elite and Palace Resorts, is a Mexican corporate entity with its corporate offices situated at Kilometro 21 de la Carretera, Cancun, Puerto Morelos SM 47

---

[2] "Attachment 'A'" is irrelevant and represents the financial aspect of the transactions.

11

Iote 1-11,Manzana 01 Edificio A, Cancun, Quintana Roo . Palace also has an

office in the United States at 8400 NW 33rd Street Suite 403, Doral, Florida 33122.

At all times relevant, Palace is in the resort hotel business and, as an integral part

of its business, Palace sells time shares to consumers, *inter alia.* These time share

units may, in turn, be rented or sold by the time-share owners to third parties.

Plaintiffs purchased time-share units from Palace, as discussed above, and, as such,

became time-share owners;

      b.    Defendant, My Timeshare Options ("MTO"), by one of its

principals, Defendant, Dan Bishop ("Bishop")[3], is a Michigan entity involved in

the purchase and sale and rental of time share units. Bishop and MTO have their

business offices at 2885 Sanford Avenue, SW #38365, Grandville, MI 49418, and

2000 Mallory Lane, Suite 130-352, Franklin, TN 37067. A search of the Michigan

Corporation Bureau revealed no corporate status. *See* Exhibit "3", advertising

received by Plaintiffs' attorney. There is no such corporate entity;

      c.    Defendant, Adam Glenn ("Glenn"), c/o MTO is a principal, as

well, of MTO, with his business address as c/o MyTimeshare Options, 2885

Sanford Avenue, SW #38365, Grandville, MI 49418, and 2000 Mallory Lane,

---

[3] There is an entity called "Real Time Leads and Marketing, Inc." located at 50 S. US Highway 1, Suite 209, Jupiter, Florida 33477.

Suite 130-352, Franklin, TN 37067. Defendant, Glenn, is believed to be affiliated, as well, with Defendant, C1 Business Brokers, and Defendant Realty Brokers International. Furthermore, Glenn is affiliated with Defendant, Realty Brokers International;

d.    Defendant, C1 Business Brokers ("C1") is an entity operating at 209 S. LaSalle Street, Chicago, IL 60604. A review of the corporate/LLC records of the State of Illinois reveals no such registered entity. *See* Glenn in sub-paragraphs b. and c., above;

e.    Defendant, Integrity Professional Services, LLC ("IPS"), is believed affiliated with Defendants, MTO, Adam Glenn and Dan Bishop, *inter alia.* The address of IPS is Suite G25, 330 Mallory Station Road, Franklin, TN 37067. The Tennessee Corporation Bureau reports that it has no listing for a corporate or LLC name similar to that of IPS;

f.    Defendant, Integrity Professional Closing, ("IPC") is a non-existent entity according to the records of the Tennessee Corporation Bureau, believed affiliated with IPS, and is believed an alter ego of the individual Defendants, Adam Glenn, Nathan Fletcher, William Rojas, Dave Nagar, Richard Green, Andy Maloney (purported President) and Salvador Beltran Santana.

e.      Defendant, Victoria Molinari ("Molinari"), is affiliated with IPS and IPC, with her business address at Suite G25, 330 Mallory Station Road, Franklin, TN 37067;

f.      Defendant, Hector Rodriguez ("Rodriguez"), is an employee at Palace, in Cancun, Mexico, at the same address of Palace;

g.      Defendant, Nathan Fletcher ("Fletcher"), is affiliated with, or an employee at, or a principal of C1, with his business address at 209 S. LaSalle Street, Chicago, IL 60604;

h.      Defendant, William Rojas, ("Rojas") and Defendant, Dave Nagar, are affiliated with, or an employee at, or a principal of C1, with his business address at 209 S. LaSalle Street, Chicago, IL 60604;

i.      Richard Green is identified as an International Escrow Agent with IPC, a non-existent corporation, with the business address at 3310 West End Avenue #540, Nashville, Tennessee 37203.

j.      Defendant, Realty Brokers International ("RBI") is another corporation that is not registered with the State of its physical location, at least, and it is affiliated with the other Defendants, specifically including Adam Glenn as a principal thereof;

k.      Defendant, Salvador Beltran Santana ("Santana"), appears to be

14

the principal of RBI, and is affiliated with the other Defendants in the scam described herein.

         l.      Defendant, Andy Maloney, signed the agreements with Plaintiffs as President of Integrity Professional Closing. *See* Exhibit "6"

         m.      Finally, Defendant, Title and Insurance Funds, Inc., ("TIF"), an entity not listed as a Wisconsin corporation, is definitely affiliated and does work for RBI and Santana, the latter a client of TIF. TIF allegedly is in the business of title insurance and providing escrow for funds in the transactions described herein.

         m.      Thus, the Defendant alleged corporate entities, to wit: C1 Business Brokers, Integrity Professional Services, LLC, Integrity Professional Closing, MyTimeShare Options, Realty Brokers International and Title and Insurance Funds, Inc., do not exist according to the records of the respective states in which they operated.

      17.      The scheme and scam in violation of RICO, *inter alia,* involves the many Defendants named above. It is believed that there are other individuals and corporate and LLC entities whose identities are not yet known. Accordingly, Plaintiffs have provided for substitution of the unknown Defendants for the above-named Jane Doe and John Doe and Unknown Corporation or LLC.

## V.    **STATEMENT OF FACTS**

15

18.     On or about October 17, 2013, Plaintiffs purchased "120 All Inclusive Elite Weeks and 10 rounds of golf" for the amounts set forth in Attachment "A" to Exhibit "1", the Contract dated October 17, 2013[4].

19.     On or about January 19, 2015, Plaintiffs purchased "140 All Inclusive Elite Weeks and 10 rounds of golf". *See* Exhibit "2", comprised of the June 19, 2015, Contract and Attachment "A" to the 2015 Contract.

20.     At all times relevant, Plaintiffs maintained all obligations to Palace, including, but not limited to, maintaining a current payment history until Plaintiffs determined that they had been scammed and that, in some capacity, Palace was at the heart of the scam.

21.     On or about August 23, 2017, Plaintiffs were contacted by telephone by a person identifying himself as Defendant, Adam Glenn.

22.     Defendant, Glenn, identified himself as a business broker with the firm of C1 Business Brokers, Chicago, Illinois, further exclaiming that:

    a.     Defendant, Glenn, was interested in providing a purchaser or a renter of Plaintiffs' time share units with Defendant, Palace;

    b.     Defendant, Glenn, had the following information:

---

[4] Accompanying the Contract are numerous other documents, not relevant to the causes of action set forth herein.

(i)     Defendant, Glenn, knew that Plaintiffs owned time shares at Palace;

(ii)    Defendant, Glenn, knew Plaintiffs' telephone number;

(iii)   Defendant, Glenn, knew the number of weeks Plaintiffs' owned pursuant to the two (2) time share contracts between Plaintiffs and Palace attached hereto as Exhibits "1" and "2";

(iv)    Defendant, Glenn, knew the Plaintiffs' account numbers assigned to them by Defendant, Palace, and other information that could have only been determined and/or gleaned from the files of Palace.

23.     The stated purpose of the telephone call from Defendant, Glenn, was to act as a broker to rent certain weeks of Plaintiffs'-owned time share units, or, in the alternative, to act as a broker to sell a certain number of Plaintiffs'-owned time share units.

24.     Defendant, Glenn, advised Plaintiffs that the rental income and/or sale income, would be substantially in favor of Plaintiffs.

25.     Defendant, Glenn, further advised Plaintiffs that he had numerous persons anxious to rent or purchase existing timeshare units.

26.     Plaintiffs expressed an interest and provided Defendant, Glenn, with Plaintiffs' email address for Defendant, Glenn, to email a proposal(s) to Plaintiffs.

27.     Needless to say, a current search by Plaintiffs' attorney fails to locate any registered business entity with the name of C1 Business Brokers in Illinois.

28.     Later in the evening of August 23, 2017, Defendant, Glenn, forwarded to Plaintiffs a proposed contract with an accompanying offer for the sale of ten (10) of Plaintiffs timeshare units for a purchase price of $31,700.

29.     Defendant, Glenn, requested that Plaintiffs provide the former with a copy of Plaintiffs' contract with Palace so that Defendant, Glenn, can offer a "proper monetary valuation of [my] property."

30.     Furthermore, Defendant, Glenn, stated that once Plaintiffs' authorization and agreement to accept the offer of the purchaser, the closing would proceed.

31.     On August 25, 2017, Plaintiffs sent Defendants, Glenn and C1, Plaintiffs' contracts with Palace.

32.     On August 29, 2017, Defendant, Glenn, informed Plaintiffs that the prospective Buyer agreed and that the Buyer had already deposited the purchase money.  However, Defendant, Glenn, then advised Plaintiffs that Plaintiffs had to prepay all resort fees (maintenance, *et al*) covering the period of time being divested by Plaintiffs, to be sent, of course, through C1 and Adam Glenn, after which Palace would permit the sale of the ten (10) weeks of timeshare units that

18

were to be the subject of the time-share sale. Defendant,. Glenn, advised that Plaintiffs would be reimbursed at closing.

33.    At the direction of Defendant, Glenn, Plaintiffs wired the sum of $9,320.00 to Defendant, IPS, the latter using the name "Integrity Professional Closing".

34.    Plaintiffs' contact at IPS was Defendant, Molinari, who forwarded purchase agreements (of the timeshare purchaser), who then sent to Plaintiffs executed purchase agreements purportedly signed by the purchasers of the ten weeks, representatives of IPS, requesting Plaintiffs' signatures thereon.

35.    Thereafter, Defendant, Glenn, offered to expand the number of Plaintiffs' time share units to  be available for sale at which time Plaintiffs requested a contact at Palace to ensure that the transactions were legitimate, and Plaintiffs were given the name of Hector Rodriguez and his contact number at Palace by Defendant, Glenn.

36.    Plaintiffs contacted Palace and a representative at Palace confirmed the employment of Rodriguez, who finally emailed Plaintiffs confirming – validating – that C1 was legitimate. Furthermore, Rodriguez had his own email at Palace, to wit:  memberservices@palace-elite.com.

19

37.    Furthermore, when Plaintiffs questioned Rodriguez, the latter had all of Plaintiffs' information as it pertained to the Plaintiffs and their ownership interest in the various timeshare units purchased by them.

38.    The information provided by Rodriguez is information that only would have been in the files of and known by Palace.

39.    After the verification by Rodriguez, Plaintiffs reasonably believed that the transactions described above were proper and legal.

40.    On September 1, 2017, the offer provided by C1 was expanded to 15 weeks with an additional option to further expand the sale of an additional number of weeks to a purchaser(s).

41.    Plaintiffs agreed, after having validated the authenticity of the "players" in the transactions, and remitted the maintenance fees for the additional five weeks, a total of $6,175.00.

42.    On September 1, 2017, Defendant, Richard Green, emailed Plaintiffs advising Plaintiffs that they would receive the sum of $66,554.00 at closing of the settlement of the sales/rentals of the Plaintiffs' time shares. Needless to say, no payments were made to Plaintiffs.

43.    On or about September 5, 2017, Defendant, Glenn, telephoned Plaintiffs and advised that the Mexican government required the payment of taxes

(a value added tax) at 16% on the income to be made to Plaintiffs, costing

Plaintiffs an additional $8,532.00 which was sent to Defendant, C1. However,

contradicting the statements of Glenn, Plaintiffs received a communication

purportedly from the Mexican Secretary of Foreign Affairs naming Integrity

Professional Closing, a nonregistered or incorporated entity, as "Integrity

Professional Closing...have the authority to receive the registration within 48

hours after the payment is showed for the $42,66.00 U,.S. Dollars."    Needless to

say, no registration or other evidence of licensure was received. *See* Exhibit "4",

both letters are believed to have been concoctions by Defendants, specifically as

there is no Integrity Professional Closing and no transaction was concluded.

44.    Then, Plaintiffs were advised they need a permit issued by the

Mexican government. In addition to Exhibit "4", *see* Exhibit "5", guaranteeing

settlement from a non-entity, signed by a non-lawyer, William Rojas and General

Manager Nathan Fletcher. Defendant, Dave Nagar, signed off on the Rental

Agreement and the Addenda thereto. The settlement never occurred. *See Exhibit*

*"6"*.

45.    Plaintiffs then realized that something was awry and demanded a

refund, at which time, Defendants advised that a refund would take sixty (60)

days.

21

46.    Furthermore, Plaintiff, Frank Baker, spoke by telephone with a person identifying himself as Nathan Fletcher, purportedly the manager with authority over Adam Glenn.

47.    Mr. Fletcher agreed with Plaintiff, Frank Baker, that Mr. Fletcher would pay $1,500 toward the permit fee, which fee totaled $4,266.00; Plaintiffs would pay $2,766.00.

48.    On September 13, 2017, Plaintiffs were advised by both Fletcher and Glenn that the latter two could only forward the amount of $1,000.00.

49.    On or about September 13, 2017, Plaintiff, Frank Baker, spoke with both Glenn and Fletcher, who advised Plaintiff, Frank Baker, that they would only pay $1,000.00 to assist Plaintiffs, leaving the sum of $3,266.00 for Plaintiffs to pay for the alleged Mexican permit.

50.    Upon confirmation on September 14, 2017 that Glenn and Fletcher would provide Plaintiffs with a tracking number, Plaintiffs wire transferred the sum of $3,266.00 to allegedly cover the price of the alleged permit.

51.    The tracking number was to identify a package to be delivered by overnight mail to Plaintiffs containing all documentation pertinent to the sale of the time share units that were the subject of the alleged transactions.

22

52.    After the most recent wire transfer, Plaintiffs researched the alleged tracking number and learned that there was no such package.  Thus, it became apparent to Plaintiffs that, although a tracking number was created, no package was sent.

53.    Later that same day, Defendant, Victoria Molinari, telephoned Plaintiff, Frank Baker, acknowledging receipt of the most recent wire transfer, and offering to research as to why the package had not been received by Plaintiffs.

54.    After this discussion with Victoria Molinari, Plaintiffs no longer had any communications from Glenn, Fletcher, and/or Molinari.

55.    Furthermore, the telephone number(s) used by Defendant, Molinari, Glenn and Fletcher, were disconnected and no longer in use.

56.    Needless to say, Plaintiffs' time-share units were never rented or sold, and no contact from any party-defendant, but for Palace, was subsequently rendered possible as all contact telephone numbers were disconnected.  Plaintiffs then contacted the Federal Bureau of Investigation.

57.    At a point in time thereafter, Plaintiffs contacted and related their issues to the Federal Bureau of Investigation, and the local police department, *inter alia,* to no apparent avail as of the date of the filing of this Complaint.

23

58.    Upon inquiry to Palace, from which all of the details of the Plaintiffs' account are believed to have been released to the other Defendants, Palace claims no knowledge of any such transactions.

## VI.    EXPLICATION OF EACH DEFENDANT'S PARTICIPATION IN THE SCHEME

The averments of paragraphs one through and including fifty-eight are incorporated herein by reference as if set forth herein at length.

### A.    Palace Elite Resorts, S.A.

59.    Defendant, Palace, is the owner and operator of resort hotels and related facilities.

60.    As a part of the operations of Palace, Palace sells time-share units in which customers of Palace, generally "consumers" as that word is defined by 15 U.S.C. § 1692a(3).

61.    As such, Palace obtains specific and personal information on and from the purchasers of time-share units, and maintains this information as part of Palace's business records.

62.    Palace controls these business records.

63.    Palace, of course, controls and directs the use and application of the business records pertaining to ownership and use of the time-share units.

24

64. For whatever reason, Palace has permitted some or all of these business records pertaining to time-shares and the consumer owners thereof for use by persons for illegal and conspiratorial activities, as a part of the Enterprise.

65. Palace benefits from the purchase by consumers of time-share units; furthermore Palace benefits, somehow, for the use of the business records for nefarious and illegal purposes, more fully discussed above and below, as a part of the Enterprise.

**B.    Hector Rodriguez**

66. Defendant, Hector Rodriguez, is an employee of Palace, although his capacity as an employee is not yet known.

67. At all times relevant, it is believed Hector Rodriguez participated in the dissemination of the personal information applicable to Plaintiffs and to members of the Class.

68. Needless to say, Hector Rodrigues, as an employee of Palace, is believed to have had access to time-share records maintained by and for and on behalf of Palace.

69. It is believed and therefore averred that Palace made available the business records pertaining to Plaintiffs and Class members to Rodriguez for dissemination for nefarious reasons and results and on behalf of the Enterprise.

25

70.    Rodriguez, a representative, agent, and/or employee of Palace is/are believed to have sold the personal information and business record information of the victims [Plaintiffs and members of the Class] for money or a participation in the profits of the Enterprise. For whatever reason, Palace permitted the use of these business records of consumers for nefarious reasons as stated above and below.

### C.    My Timeshare Options

71.    A search through the Michigan Corporation Bureau shows no entity incorporated or otherwise named "My TimeShare Options".

72.    My TimeShare Options is therefore a non-registered fictitious name used by the purported members therefor and in furtherance of the scheme and scam perpetrated upon Plaintiffs and members of the Class.

73.    Furthermore, a search of the Tennessee Corporation Bureau produces no entity by the name of My TimeShare Options.

74.    The name "My TimeShare Options" was used by the individual Defendants named herein, to wit: Dan Bishop and Adam Glenn, to assist and enable the scheme and scam by providing the *imprimatur* of legitimacy to a non-existing legal entity and the individuals working together to perpetrate and

26

perpetuate the scam of purchasing time share units, succinctly described as follows:

> The scheme was to entice time share owners (consumers) who desired to divest of some or all of their time shares to prospective, yet, false and non-existent, purchasers or renters.  As a time share owner who would be selling or renting to another, certain requirements of "completed rental or sale" required certain costs paid by the owner/seller, owner/landlord, to consummate the sale, rental.  Upon receipt of these payments, the Plaintiffs and members of the Class would receive none of the funds promised, but were left with having paid pre-sale, pre-rental, "charges", with no rental or sales consummated.  Defendants, but for Palace, "went out of business", disconnected  telephones, or, in the alternative, established new business names, procured new telephone numbers, and, it is assumed, the scammers moved on with the same manner and method of the described scheme.

### D.    C1 Business Brokers

75.    C1 Business Brokers is a fictitious entity like My TimeShare Options: It does not exist.

27

76.    C1 Business Brokers is conducted by the individual Defendants, Adam Glenn, Nathan Fletcher, and William Rojas and other named below in the same manner as My TimeShare Options.  Therefore, paragraph 74, above, is incorporated herein by reference with only the name of C1 Business Brokers substituted for My TimeShare Options.

### E.    Integrity Professional Services, LLC[5]

77.    This Tennessee corporation went inactive in the year 2015; therefore, although its name was used as one of the corporate entities in scheme/scam, it is a dissolved corporation and, therefore, non-existent.

78.    Therefore, the individuals who purported to be acting on behalf of Integrity Professional Services, LLC, were using its name as a sham to give the individuals using the name as an imprimatur of a legitimate corporation.  Victoria Molinari, along with Mike Bernd and Richard Green, Defendants, purported to have worked with Integrity in processing the scam transaction.

### F.    Individual Defendants, Dan Bishop, Adam Glenn, Victoria Molinari, William Rojas, Dave Nagar, Andy Maloney, Nathan Fletcher, Hector Rodriguez,  Salvador Beltran Santana, Richard Green and John Doe and Jane Doe

---

[5] Formerly called Integrity Accounting Services, LLC.

These individual Defendants all participated in the scheme knowingly and wittingly and with intent to scam and steal from Plaintiffs and the members of the Class.

79.    Upon receiving information provided by Palace and, on belief, Hector Rodriguez, and others, as to the names, addresses, telephone numbers, and other personal information, including time share ownership, account numbers and the like, Rodriguez and others sold or otherwise conveyed this information to the individual Defendants who participated in the Enterprise and its scheme working the telephones, prolific email correspondence, and other aspects of the Enterprise's operations, all in furtherance of the Enterprise and the scheme to scam persons as Plaintiffs.[6],[7]

## VI.    **HOW THE SCHEME OPERATED**

The averments of paragraphs one through and including seventy-nine above are incorporated herein by reference as if set forth herein at length.

---

[6] It is not Plaintiffs' intent to limit the named defendants or the like persons who participate in the scam as do the named Individual Defendants.

[7] Plaintiffs are in possession of numerous email correspondence with various persons as Adam Glenn, C1 Business Brokers, Integrity Professional Services, LLC, Victoria Molinari, Hector Rodriguez (as "Member Services" for Palace Resorts, and Richard Green, etc.

29

80.    When a customer/consumer of Palace purchases a time share from Palace, Palace will take the following information, *inter alia*: Name, address, telephone number(s), banking information, credit card information, and other personal data; upon the purchase by Plaintiffs and the Class members, Palace will assign to the time-share purchasers reference numbers, account numbers, payment information and other personal information.

81.    Depending on certain criteria such as number of time shares, length of time, payment schedules, income and bank account and investment information made available by the time-share purchaser, Palace, by its scam-participating representative, such as Hector Rodriguez, and others not named or known as of yet, accumulates this information and places it in the hands of one or more of the individual-named Defendants, to wit:  Adam Glenn, Nathan Fletcher, Dan Bishop, Victoria Molinari, William Rojas, Richard Green, Salvador Beltran Santana, Dave Nagar Andy Maloney, and others whose names are not yet known, represented in the caption as John Doe and Jane Doe.

82.    As in the case with Plaintiffs, Adam Glenn, for example, contacted Plaintiffs stating that he can sell and/or rent some of all of the time-shares they have available.  Glenn and the other individual Defendants would advise Plaintiffs

and the Class members that he can process a sale or rental of the Plaintiffs' time share with persons with whom Glenn could negotiate. *See* Exhibit "7".

83.    Glenn was in possession of a substantial quantity of personal information of the Plaintiffs, which certainly helped "sell" to Plaintiffs Glenn's, and others, legitimacy, which was shared with Plaintiffs.

84.    Plaintiffs were seeking relief from the financial burden of the quantity of time share units purchased by them, and were very interested in a transaction to sell some of their time share units.

85.    Within a short period of time, Glenn produced sales' agreements and initiated the process of convincing Plaintiffs they needed to pay certain charges up front, such as maintenance, permit fees, taxes and other charges.

86.    Glenn, working with the other individual defendants was able to cajole Plaintiffs with sensible and reasonable requests for the payment of money, all of which was to be refunded at settlement, according to Glenn.

87.    Glenn worked in conjunction with Molinari, Rodriguez (and, therefore, Palace), Fletcher, Green, and Santana, Nagar, Maloney and purported representatives of the non-existent C1 Business Brokers, and the inactive since 2015 Integrity Professional Services, LLC. And professional Integrity Closing, and the other alleged corporate entities.

31

88.     The scam worked:  Plaintiffs paid to Glenn, *et al.*, the total sum of $27,293.

89.     When Plaintiffs asked for the contracts of sale, and questioned when the sales would consummate so that Plaintiffs could recover their advances and the sales' price for the time shares, Glenn[8], *et al.*, had disappeared, and the telephone contacts were discontinued.  Defendant, Richard Green, in order to pacify Plaintiffs, emailed the Plaintiffs telling them that they will receive $66,554.00 , encouraging Plaintiff to allow more time to pass before they contacted the "authorities" and counsel.

90.     At this point, Plaintiffs contacted counsel, *inter alia,* as they then realized they had been cheated.

91.     The mechanism of the scam is a perfect fit for RICO, *et al.*, and each and every Defendant had a role in the formulation, initiation and perpetuation of the Enterprise's scheme.

## VII.  CLASS ACTION ALLEGATIONS

The averments of paragraphs one through and including ninety-one above are incorporated herein by reference as if set forth herein at length.

---

[8] Glenn and others have been located by the undersigned counsel since the initial draft of this Complaint; however, the content is kept in to illustrate that certain of the Defendants are mobile as are the means of communications.

92.     This case is properly maintainable as a nationwide Class action

pursuant to and in accordance with <u>Federal Rule of Civil Procedure</u> ("F.R.C.P."),

Rule 23(a), and 28 U.S.C. 1332(d), *inter alia*:

(1)     On belief, the Class is so numerous that joinder of all members

is impractical.  Although the size of the Class is not specifically known, the

number of Class members is substantial, believed numbering at least in the

hundreds.

(2)     There are substantial questions of law and fact common to the

Class.

(3)     The claims of the representative Plaintiffs are typical of the

claims of the members of the Class.

(4)     The representative Plaintiffs will fairly and adequately protect

the interests of the Class under the criteria set forth in F.R.C.P. 23.

(5)     A class action under the circumstances discussed herein

provides the most fair and efficient method for adjudication of the controversy

under the criteria set forth in F.R.C.P. 23.

93.     This case is properly maintainable as a Class action pursuant to and in

accordance with F.R.C.P. 23(b)(3).

33

a.      The issues of fact common to the members of the Class, as

required by Local Rule of Civil Procedure ("Local Rule") for the Eastern District

of Pennsylvania, 23.1(b)(2)(D).

b.      The questions of law common to the members of the Class, as

required by Local Rule 23.1(b)(2)D).

c.      The questions of law and the questions of fact predominate for

the Class over any questions of law and/or fact affecting only individual members

of the Class.

d.      A Class action is superior to any other action for the fair and

efficient adjudication of the controversy as the commonality of factual and legal

questions for the Class are overwhelmingly predominant.

e.      As the questions of law and of fact are common to the members

of the Class, and considering the prospective individual damages at issue, the

interests of the members of the Class will best be controlled and served by this

action.

f.      There is no reason why the litigation should not proceed in this

particular forum.

g.      There are no unusual difficulties foreseen to be encountered in

the management of this Class action.

h.    Plaintiffs are not aware of any similar actions involving similar issues with the same Defendant having been filed in the United States District Court for the Eastern District of Pennsylvania, or in any Court.

i.    The claims by Plaintiffs, themselves, and for and on behalf of the members of the Class, are justified as a Class action for the reason that, although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the hundreds on a nationwide basis.

94.    A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class is overwhelmingly predominant.

95.    As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

96.    The claims by Plaintiffs, for themselves and for and on behalf of the members of the Class, are justified as a Class action for the reason that the causes of action for the Plaintiffs are the same causes of action for all of the members of the Class derived from the following issues:

a.     Whether Defendants have joined with all other defendants in a conspiracy to procure personal and private information from Palace and its representatives with the intent to commit fraud, *inter alia*, by the use of the interstates wire and postal systems of the United States, against those persons (time share owners) (victims of the scam - class members) as more fully discussed above and below;

b.     Whether Defendants, in conspiracy one with the others, have sought and procured the private and personal information with the intent to initiate and perpetuate the false sale or rental of these time share units to non-existent persons for the purpose of securing money from the victims – the members of the Class – for alleged charges as follows:

(i)     Prepaid Maintenance Fees;

(ii)     Mexican Taxes;

(iii)     Mexican Permits;

(iv)     Other charges

c.     Whether Defendants, in conspiracy one with the others, falsified the existence of purchasers or renters and any alleged contracts for rent or sale;

36

d.  Whether Defendants, one in conspiracy with the others, received the alleged funds discussed in sub-paragraph b., above, and kept the money.

e.  Whether certain of the Defendants then took the remitted funds and discontinued any means of contact with the members of the Class and Plaintiffs the victims; and

f.  Whether Defendants' operations were intended to and, in fact, did, take money from the members of the Class, and the Plaintiffs, without any consideration therefor, meaning there were no buyers or renters for the time share units that were the subject of the scam. Thus, Defendants took the money and "ran"[9];

g.  Whether Defendants have acted in a conspiracy one with the other(s) to knowingly initiate and perpetuate the scam as described above and below;

h.  Whether these acts and actions, in and by which some or all of the Defendants acted in concert with other Defendant(s), are violative of RICO

---

[9] Plaintiffs assume that the money received by the Defendants was divided among the Defendants in agreed percentages.

i.    Whether these acts and action, described above are violative of the consumer protection statutes of the Commonwealth of Pennsylvania, Michigan, Tennessee, Florida, *inter alia*;

j.    Whether Plaintiff and the members of the Class incurred damages as a result of these violations and are Defendants liable therefor?

k.    Whether Plaintiff and the members of the Class are entitled to injunctive relief, restitution, interest thereon, attorney's fees, punitive damages, treble damages, and other damages as a result of scheme described above.

## IX.   THE CLASS

97.    The above-named Plaintiffs bring this action on behalf of themselves and all persons:

a.    Who have been the subject of and damaged by the scheme by Defendants to provide non-existent purchasers and/or renters of time-share units made available by the owners thereof, which damages consist of charges upon Plaintiffs and the Class members, *inter alia,* as set forth in paragraph 96.b., above;

b.    Who have been the subject of the scheme as described above and below; and

c.    Who have been damages as a result.

98.    The Class can be defined as

38

Those persons who have or have had time share units with Palace
Elite Resorts and who have been solicited by alleged brokers or agents
claiming that the latter have persons who wish to purchase or rent
those time share units that the owners thereof wish to sell and/or rent,
and who prepaid through the defendants alleged charges, taxes, permit
fees, and other charges in advance of the sale and/or rental to be
reimbursed at settlement. In fact, there were no buyers or renters and
the charges paid by the members of the Class were taken by the
Defendants who absconded with the funds.

The Class period begins within the past ten (10) years and continues.

## X.   CAUSES OF ACTION

Paragraphs one through and including 98 above are incorporated herein by

reference as if set forth herein at length.

### COUNT I:  CLASS ACTION:  THE FEDERAL RACKETEER
### INFLUENCED AND CORRUPT ORGANIZATIONS ACT("RICO")
### PLAINTIFFS AND CLASS MEMBERS V. DEFENDANTS

99.  *Salinas v. United States,* 552 U.S. 52, 63-66 (1997), as cited by The

Honorable  Eduardo Robreno in *United States of America v. Ligambi, et al,*

U.S.D.C., E.D. Pa. 09-00496-01, *5 (Robreno, 2012): "The essential elements of a

substantive RICO violation under § 1962(c) are:  '"(1) the existence of an

enterprise affecting interstate commerce; (2) that the defendant[s]was employed by

or associated with the enterprise; (3) that the defendant[s] participated, either

directly or indirectly, in the conduct of the affairs of the enterprise; and (4) that he

or she participated through a pattern of racketeering activity [as defined at 18

39

U.S.C. § 1961(1)[10] & (5) or through collection of unlawful debt].' <u>United States v.</u>

<u>Console, 13 F.3d 641</u>, 652-53 (3d Cir. 1993)."

100.   Each of the Plaintiffs and Defendants are "persons" within the

meaning of 18 U.S.C. § 1961(3).

101.   At all relevant times, Defendants, (the "conspirators") acted together

and in concert, thereby constituting a group of persons associated together in fact

for the common purpose of carrying out the unlawful scheme described above and

below.

102.   Judge Robreno, in *Ligambi, supra*, at page 8, states:  "[A] RICO

conspiracy under § 1962(d) has no 'overt act or specific act requirement. <u>Salinas,</u>

522 U.S. at 64. Moreover, the government need not prove that Defendant

committed or personally agreed to commit a racketeering act, nor that Defendant

participated in the 'operation or management' of the charged RICO enterprise.

[Citation omitted.] Rather, all the government is required to prove is that if the

objective of the conspiracy was achieved, the enterprise would be established, and

that the defendant agreed that two or more acts of racketeering would be

---

[10] Defendants have violated 18 U.S.C. §1341 (relating to mail fraud), 18 U.S.C.
§  1343 (relating to wire fraud)

committed by a conspirator in the conduct of the affairs of the enterprise. Salinas, 522 U.S. at 66.

103.   The Conspirators have functioned as a continuing unit in carrying out the unlawful scheme by and with the agreement of each and all of the conspirators, Defendants named above.

104.   The Conspirators' association-in-fact (the "Enterprise") constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).  As discussed above, the Enterprise clearly affects interstate commerce.

105.   The Enterprise functions as a continuing unit, commencing before the Class period, and continuing throughout the Class period.  By its nature, the Enterprise is open-ended and will continue indefinitely absent this litigation.

106.   The Conspirators each give substantial assistance to the Enterprise as a whole and to the unlawful activities and scheme through which its affairs were conducted.

107.   In furtherance of the affairs of the Enterprise, the Conspirators have committed and continue to engage in a pattern of racketeering activity consisting of at least two or more predicate acts, in violation of wire fraud and mail fraud, *inter alia,* during the Class period, as proscribed by 18 U.S.C. §§ 1341 and 1343. These violations are specifically identified in paragraphs in the Statement of Facts

41

set forth above, specifically vis-à-vis paragraphs 17 through and including 91, above, and the attached exhibits, all of which are more specifically set forth herein by reference.

108.    Specifically, during the Class period, the Conspirators issued communications to the respective Plaintiffs and further utilized the United States postal system, and/or vis-à-vis facsimile and telephone transmissions, as to not only the Plaintiffs but by and between the respective co-conspirators, as well. All of these transmissions and use of the postal system have been in furtherance of the Enterprise and the Conspirators'/Defendants' unlawful scheme.

109.    Specifically, during the Class period, the Conspirators issued communications to the respective Plaintiffs and further utilized the wire system throughout the United States, and/or vis-à-vis facsimile and telephone transmissions as to not only the Plaintiffs but by and between the respective co-conspirators, as well. Transmissions included wire transfer of funds to the Enterprise although the use of the interstate wire system and which have been in furtherance of the Enterprise and the Conspirators' unlawful scheme.

110.    There has been a relationship between the predicate acts, to wit: The predicate acts involved a similar purpose, sought to achieve similar results, with similar participants utilizing similar methods.

111    There has been continuity of the use of the pattern of racketeering activity as exemplified by the history involving the Plaintiffs, Frank Baker and his wife, Kelsey Baker, and there is a substantial threat that this type of activity will continue in the future as a repetitive course of action, and for as long as the conspirators benefit financially by these unlawful efforts.

112.    Plaintiffs have suffered quantifiable damages, set forth above.

113.    The conspiracy effectively involves the following scheme:

a.    Palace releases to the fellow conspirators personal and account information on certain owners of time share units;

b.    One or more of the individual defendants then would contact the respective time share owners identifying themselves[11],[12] as representing persons who have expressed interest in purchasing time share units from time share owners at Palace who may be interested in reducing their ownership of the time share units, or, at least, renting some time share time;

c.    The contacting Defendants had sufficient personal information of the person(s) they were telephoning, and account information, both to the extent

_____

[11] Plaintiffs do not know if the names provided by the individual Defendants in the latter's communications are the real names of the co-conspirators.
[12] As reported above, it is known that the business entities listed as Defendants, but for Palace, are either non-existent and, therefore, untrue, or a dissolved, now non-existing corporate entity.

that the Defendants had credibility that they were somehow endowed with the blessing of Palace to do their "business;

      d.    If the time share unit owners expressed interest, the respective Defendant(s) would communicate back with the time share owner advising the latter that he/she had customers for the time share owners;

      e.    Thereafter, the respective Defendant(s) would advise the time share owner that the contracts have been executed and will be sent to the time share owner for his/her signature; that the prospective buyer/renter, has already put the funds for the purchase/rent into an escrow account, awaiting Seller's documentation;

      f.    Then, the respective Defendant(s) would advise the Class member that Palace requires that the maintenance charges for the period of the rental or for a specified period of time, must be advanced by the Class member before the transaction can conclude;

      g.    Furthermore, the time share owner would be told that a Mexican tax must be prepaid, a Mexican permit must be purchased, and

      h.    These prepayments will be prepaid reimbursed to the seller/renter at settlement.

      i.    After all of the funds have been delivered by wire transfer,

44

mail, or other delivery method, the respective Defendant(s) would disappear and the telephone numbers associated therewith disconnected.

j.     Defendants received all of the funds;

k.     There were no funds paid to Plaintiffs or members of the Class;

l.     Members of the Class suffered losses to the extent of the money they gave to Defendants;

n.     The time share units were neither sold or rented; and

o.     The Plaintiffs and members of the Class received no recovery.

114.   Plaintiffs reported the scam to the Federal Bureau of Investigation, and the local police. Plaintiffs have heard nothing.

115.   This scheme is knowingly participated in by Palace, and the other Defendants.

116.   The conspirators have acted in agreement one with the other and with all conspirators to achieve the goal of securing as much money as possible from the innocent victims of the scam.

117.   As noted above, and an intended, necessary and foreseeable consequence of the foregoing transactions and communications during the Class period, Plaintiffs and the members of the Class were caused injury and damage to their property.

118.   Palace, and the other Defendants, each and all actively participated in the direction, operation, and/or management of the Enterprise.  All Defendants have played a vital, directive, important and instrumental role in the Enterprise.

119.   Palace knowingly implemented decisions of the Enterprise, and its active participation was a vital, direct, important and instrumental to the achievement of the Enterprise's primary goal of theft (by mail fraud and wire fraud) by brokering the fictitious sale and rental of time share units by and between Plaintiffs, and members of the Class, and Defendants, with the use of non-existing entities and purchasers and/or renters.

120.   On belief, each and all of the named Defendants knowingly implemented decisions of the Enterprise, and their respective active participation was vital, direct, important and instrumental to the achievement of the Enterprise's primary goal of fraudulently obtaining money from Plaintiffs and members of the Class.

121.   The individual Defendants actively participated in the direction, operation, or management of the Enterprise.  The individual Defendants played a vital, direct, important and instrumental role in the Enterprise. The individual Defendants knowingly implemented decisions of the Enterprise, and its active participation was vital, directive, important and instrumental to the achievement of

46

the Enterprise's primary goal of fraudulently obtaining money from Plaintiffs and members of the Class.

122.    Needless to say, there was no justification for the theft, and attempted theft and conspiracy to participate therein.

123.    In summary,

a.    The Conspirators conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c);

b.    In violation of 18 U.S.C. § 1962(d), the Conspirators conspired to conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity violative of 18 U.S.C. § 1962(c);

c.    As a direct and proximate result of violations by the Conspirators of 18 U.S.C. §§ 1341 and 1343 in furtherance of the Conspiracy, Plaintiffs and the Class were caused to suffer injury. These damages were caused by the Conspirators' unlawful predicate acts of racketeering and their RICO violations.

d..    Plaintiffs' damages and the damages to the members of the Class are represented by:

(i)    Money paid to the conspirators;

47

(ii)    Loss of the ability to rent or sell the respective time unit share until it was known that the above was a scheme to defraud, legal fees and costs, and other compensatory damages.

WHEREFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing Plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Requiring that the Defendants pay compensatory damages, statutory damages; attorney's fees and experts' fees; and punitive damages;

C.    Enjoining these Defendants from conducting such violative activity in the future, and

D.    Granting such other relief as the Court may deem appropriate

## COUNT II. PENNSYLVANIA'S UNFAIR TRADE PRACTICES: 73 PA. 201-1, *ET SEQ.* PLAINTIFFS V. DEFENDANTS

Paragraphs one through and including one hundred and twenty-three are incorporated herein by reference as if set forth herein at length.

124.    Each and every member of the Class is a consumer.

125.    Palace, and the individual Defendants are entities that are citizens of various states with their principal places of business in different states and

48

jurisdictions, and, from these various principal places of business, they place their respective products and services for sale into the stream of commerce of the United States of America, and this State and County, and in every state in this nation, and makes such products and services available to the consumer in every jurisdiction in which any member of the Class resides.

126.    Defendants have advertised, offered for sale or distribution their respective products and services.

127.    Defendants have engaged in unfair and/or deceptive acts trade practices, unfair methods of competition, and have practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the members of the Class, as described above.

     a.    Knowingly making false and misleading statements of fact, in writing and otherwise;

     b.    Knowingly making false and misleading statements to entice the respective Plaintiffs and members of the Class to rely on the misleading and false statements;

     c.    Utilizing false and misleading characterizations to commit theft of for the amounts each Plaintiff paid to the schemers – the Defendants;

     d.    Taking actions that cannot legally be taken or justified;

49

e    Otherwise engaging in other fraudulent conduct "which creates a likelihood of confusion or of misunderstanding";

f.    Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

128.    The facts constituting the basis for these unfair trade practices are as set forth above.  Defendants have engaged in other activity further exacerbating their participation in unfair trade practices.

129.    These unfair trade practices in which Defendants have participated are all intertwined with the factors constituting misrepresentation:

a.    By acts, Defendants have made representations of a material nature that Defendant knew (or should have known) were misrepresentations.  These misrepresentations were made to Plaintiffs and the members of the Class.

b.    These misrepresentations were made with the intent to cause Plaintiffs, *et al.,* to reasonably rely to their detriment, which occurred, causing Plaintiffs to suffer damage, including, but not limited to, paying sums of money to Defendants under false circumstances, money they otherwise have no liability to pay.

50

c.     These misrepresentations were made with the intent to cause Plaintiffs, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiffs to suffer damage, more fully discussed above.

d.     Because of Defendant's misrepresentations and Plaintiffs' reasonable reliance thereon, Plaintiffs suffered damages reflected in the payment of sums for which Plaintiffs had no liability or responsibility, and other damages more fully set forth above, plus attorney's fees and costs.

e.     The representations made by Defendant were false, constituting misrepresentations.

f.     Plaintiffs reasonably relied upon these misrepresentations to their detriment.

130.   These misrepresentations were intentional, or at least so recklessly made as to constitute intentional fraudulent statements.

131.   Defendants have, therefore, engaged in unfair trade practices to consumers.  As such, Defendants are in violation of or has violated Pennsylvania Statutes 73 P.S. § 201-1, *et seq*., and 73 P.S. § 2270.4 and 73 P.S. § 2270.5,and the consumer statutes of other states..

51

132.    Defendants have, therefore, engaged in misrepresentation and fraudulent misrepresentation, entitling Plaintiffs to suffer damages as provided by statute.

WHEREFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to compensatory damages, attorney's fees, punitive damages, treble damages, costs, and such other award as this Honorable Court deems appropriate.

## COUNT III:  CLASS ACTION COMMON LAW FRAUD
## PLAINTIFFS AND CLASS MEMBERS V. DEFENDANTS

Paragraphs one through and including one hundred thirty two are incorporated herein by reference as if set forth herein at length.

133.    Each Defendant made or participated in the making of intentional false representations of material fact.

134.    The misrepresentations were intended for the Plaintiffs and the members of the Class to rely thereon.

135.    Plaintiffs and Class Members relied thereon to their respective detriment.[13]

---

[13] "Reliance" need not be individually substantiated in this case as, by definition, if a member of the Class, reliance is established.

52

136.    The detriment consisted in Plaintiffs and Class members paying charges to effectuate the sale and/or rental of the time share units owned by Plaintiffs and the Class Members which, of course, was "fake", and the initial damages are those paid by the Plaintiffs and the Class members.

137.    Plaintiffs and the Class members reasonably relied on the representations of Defendants.

WHEREFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to compensatory damages, attorney's fees, punitive damages, treble damages, costs, and such other award as this Honorable Court deems appropriate.

## COUNT IV: CLASS ACTION: CONSPIRACY
## PLAINTIFFS AND CLASS MEMBERS V. DEFENDANTS

Paragraphs one through and including one hundred and thirty seven are incorporated herein by reference as if set forth herein at length.

138.    Each and all of the individual defendants and the corporate defendants, by their respective officers, directors, shareholders, agents, attorneys, and affiliates combined and agreed, with intent, to do those unlawful acts set forth above.

139.    Each and all of the defendants so acted with intent to injure and harm the Plaintiffs, all as more fully set forth above.

53

140.   The Defendants acted with malice; that is, with the intent to harm the Plaintiffs.

141.   It is believed that all defendants acted with malice; that is, with the intent to harm plaintiffs.

142.   The overt acts pursuant to the conspiracy are as set forth in the "Statement of Facts" and Count I, above.

143.   The overt acts as set forth above were all pursuant to the common purpose and design as set forth above.

144.   There is no question that this conspiracy led to the substantial damages as set forth above.

145.   As stated in *United States of America v. Thompson,* U.S.D.C., E.D. Pa. CR-12-418-5, *3 (Sanchez, J. 2014):  "A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

54

146.    Each and all of the Defendant/conspirators committed wire fraud and mail fraud.

WHEREFORE, Plaintiffs ask this Honorable Court to find in their favor and against Defendants and in favor of Plaintiffs and grant compensatory damages, punitive damages, interest and costs, attorney's fees and costs, and such statutory and other relief as the Court may deem appropriate.

## COUNT V: NEGLIGENCE
## PLAINTIFFS V. DEFENDANT, PALACE

Paragraphs one through and including one hundred and forty-six are incorporated herein by reference as if set forth herein at length.

146.    At all times relevant, Palace has had a duty to its time share owners to protect the identity of the time-share owners.

147.    At all times relevant, Palace has had a duty to protect the personal and identification information attributed and assigned to the time-share owners.

148.    At all times relevant, Palace has had a duty to ensure that its employees would act, at all times, to protect the identity and personal identification information of the time-share owners.

149.    Palace abrogated those duties by negligently permitting the release to the other Defendants, including the unknown Jane Doe and John Doe, *inter alia*, of the identity and personal identification information of the time-share owners.

55

150.    As a direct and proximate result of the negligence of Palace, Plaintiffs have suffered damages as set forth above.

WHEREFORE, Plaintiffs ask this Honorable Court to find in their favor and against Defendants and in favor of Plaintiffs and grant compensatory damages, punitive damages, interest and costs, attorney's fees and costs, and such statutory and other relief as the Court may deem appropriate.

Respectfully submitted:

Stuart A. Eisenberg
Attorney I.D. 12433
Carol B. McCullough
Attorney I.D. 56424
MCCULLOUGH EISENBERG, LLC
65 West Street Road, A-204
Warminster, PA 18974
1-215-957-6411
Attorney for Plaintiffs

January 24, 2018

mlawoffice@aol.com
mccullougheisenberg@gmail.com

56